SOLMAN et al. v. ARCARO.

(Supreme Court, Appellate Division, First Department. May 19, 1911.)

INJUNCTION (§ 136*)—TEMPORARY INJUNCTION—PROPRIETY.

Defendant was improperly enjoined pendente lite from performing theatrical service, in a suit on a contract whereby it was agreed that he should enter plaintiffs' employ to perform at theaters to be designated by them, at a fixed salary while performing, plaintiffs taking the excess paid by theaters, where plaintiffs were not bound to obtain employment for defendant at any particular rate, or even above a stated minimum, though they guaranteed him 25 weeks' employment each year.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 136.*]

Appeal from Special Term, New York County.

Action by Alfred Solman and another against Anton Arcaro, alias Signor Trovato. From an order granting an injunction pendente lite, defendant appeals. Reversed, and motion denied.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Phillips & Steinhardt (Herman Phillips, of counsel), for appellant.
Maurice Deiches (Monroe Goldwater, on the brief), for respondents.

CLARKE, J. Appeal from an order restraining the defendant pendente lite from performing his unique specialty act of rendering services to or for any person, company, or corporation, or from performing in any theater or place or places of public amusement without the permission and consent of the plaintiffs herein, until the expiration of the term mentioned in the contract between the parties hereto.

The defendant was performing as a violinist in a table d'hote restaurant in Harlem at $35 a week when the plaintiffs claimed to have discovered him. They allege that they were copartners engaged in business as vaudeville producers. They had no theaters. They were middlemen or "farmers out" of vaudeville performers. They did not even deal with theatrical managers directly, but with booking agencies. The parties entered into an agreement which stated:

"The party of the first part agrees to enter the employ of the parties of the second part from July 23/09, to Sept. 1/11, and to perform for them at such theaters as they may designate his unique violin specialty. The party

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the first part shall receive the following salaries for each week he gives his specialty at the theaters designated by the parties of the second part: From July 24/09, to Sept. 1/09, $75 per week; Sept. 1/09, to Sept. 1/10, $85 per week; Sept. 1/10, to Sept. 1/11, $100 per week, when the salary of the act is $150, $115 when it is $175, $125 when it is $200. In addition to his R. R. fare, allowance of 100 lbs. excess baggage and one Pullman sleeper berth where necessary. The party of the second part guarantees the party of the first part at least 25 weeks a year employment. It is mutually agreed that the party of the first part will not collect any moneys from the local theater managements due under this contract, but that he will receive his salary from the party of the second part at the end of each week during which he has performed his unique specialty as above mentioned, and it is mutually agreed that the management of the local theater will remit in full commissions the entire money due the parties of the first and second part to the Pat Casey Agency, Longacre Building, New York City."

This contract was subsequently modified, so that the defendant should receive the salary from the local theaters in the first instance under a promise to account to the plaintiffs. It seems to have been kept for about a year, when the plaintiffs allege that it was broken by defendant. This action is for an accounting and an injunction.

It·is plain that under the agreement defendant was to receive no moneys from the´plaintiffs; but they were to take such part of his salary, paid by the theaters, as exceeded the amounts set forth in the contract ·as the limitation of his own compensation. It is also clear that there was no promise on their part as to how much defendant was to receive for each week—no obligation that they were to obtain employment for him at any prescribed amount, or even above an expressed minimum. There is, to be sure, an agreement to guarantee defendant at least 25 weeks a year employment; but no salary is stipulated. Further, as plaintiffs were not theatrical producers or man-. agers, had no companies or theaters, but were mere middlemen, and as defendant was not to work for them, this contract has none of the elements which have caused the courts to enforce the negative covenant, express or implied, not to work for others when the services were special, unique, and extraordinary.

We think the injunction pendente lite was improvidently granted, and the order appealed from should be reversed, with $10 costs and disbursements to the appellant, and the motion denied, with $10 costs. All concur.